UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-683-H

LEWIS R. LAROCHE                                                                                    PLAINTIFF

v.

DR. STEVEN HILAND, et. al.                                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Lewis R. Laroche, filed a pro se complaint under 42 U.S.C. § 1983, alleging multiple defendants violated his constitutional rights while in custody of the Kentucky Department of Corrections ("KDOC").  By previous order, this Court dismissed KDOC as a defendant, dismissed all claims for injunctive relief as moot, and dismissed Fifth and Fourteenth Amendment due process claims.  Remaining are Eighth Amendment individual-capacity claims against Dr. Steven Hiland, Channin Hiland, Dr. Howard Schiele, Correct Care Integrated Health Services, and Cahaba Imaging, P.C.  Now before the Court is a Rule 12(b)(6) motion to dismiss by Dr. Steven Hiland and Channin Hiland (collectively, "Defendants" or "the Hilands").  Fed. R. Civ. P. 12(b)(6).  As grounds for dismissal the Hilands argue that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.

I.

For the purpose of their motion to dismiss, Defendants accept as true the facts stated in Plaintiff's complaint and attached exhibits.  *See, e.g.*, *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009); *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).  The Court summarizes the facts

relevant to Defendant's motion below.

On December 23, 2008, Mr. Laroche was in KDOC's custody at the Kentucky State Penitentiary ("KSP") when he slipped and fell on ice, injuring his left hip and pelvis. The next day, Defendant Channin Hiland, a nurse practitioner at KSP, took two x-ray images of Plaintiff's left hip and pelvis, but only sent the hip x-ray image to a radiologist, Dr. Howard Schiele. Channin Hiland told another nurse that she did not have time for Mr. Laroche, as she was late for Dr. Hiland's office. The preliminary x-ray report for Plaintiff's left hip, signed by Channin Hiland, notes that the impression was within normal limits. Having only seen the left hip image and not the pelvis image, Dr. Schiele concluded, "[t]he examination shows no evidence of recent fracture or other significant bone abnormality." Plaintiff was discharged from the KSP infirmary on December 27, 2008.

Mr. Laroche attempted to get medication and treatment in the following months and was walking with a broken hip. According to KDOC records provided by Plaintiff, on February 4, 2009, he complained of back pain and muscle spasms to a nurse who prescribed cyclobenaprine hydrochloride and naproxen medications. He saw Dr. Steven Hiland on February 24, who noted: "X-rays are [within normal limits]. There is no radicular component." Dr. Hiland found Plaintiff had a soft tissue injury to his left hip and advised him to continue taking naproxen. Plaintiff returned a month later, still complaining of pain and walking with a limp. Dr. Hiland ordered the medication indomethacin that Plaintiff requested, although "as far as [he could] tell, [Plaintiff] should not have [it] at this time." Plaintiff started taking indomethacin on May 5. On May 17, he returned to the KSP infirmary complaining he was unable to walk using his left leg and that his hip continued to "pop in and out of socket." Dr. Hiland ordered, by telephone, that Plaintiff

be held in the infirmary with "no wheelchair or crutches for ambulation" until Dr. Hiland could see him in the morning.

The next morning Dr. Hiland recorded that the patient "fell on his [left] hip yesterday" and that an x-ray image showed "irregularity of the hip joint."  That same day, May 18, 2009, Western Baptist Hospital admitted Mr. Laroche in its emergency department.  A CT scan of his left hip and pelvis showed evidence of septic arthritis with osteomyleitis and a psoas abscess.  He underwent "emergent incision and drainage of left hip" that day, revealing a pus that grew cultures of *staph aureus*.  A week later he underwent another procedure to drain the abscess and place a Groshong catheter and was discharged to the Kentucky State Reformatory ("KSR").  A subsequent x-ray image showed "chronic deformity of the left femoral head and acetabulum."

At some point between his discharge from the KSP infirmary and his transfer to Western Baptist Hospital, Mr. Laroche filed a grievance.  There is no record of this grievance filing.  Having not received a response to his grievance, he inquired as to its status after his discharge from the hospital and was told it was lost.

After learning his first grievance was lost, Mr. Laroche filed a new grievance on July 31, 2009 at KSR.  He complained he was made to walk on a broken hip for nearly six months at KSP until he underwent surgery, causing a chronic joint disease in his hip and a bone deformity in his left femur.  He also complained that he was not getting pain medication and that he had been labeled a "drug seeker" by KSR medical staff.  KSR's Grievance Coordinator rejected his grievance on August 10, 2009 because it "[w]as filed more than five days after the incident."

3

Mr. Laroche filed another grievance at KSR on August 20, 2009.[1] He reiterated that he had developed chronic degeneration joint disease and bone deformity from walking on a broken hip for six months and that Correct Care and KDOC staff caused these conditions. He also complained again about his pain medication and being labeled a drug-seeker. In the "Action Requested" section he asked for an immediate appointment with Dr. Kemem and a statement "that any corrective surgery recommended by the surgeon at UK would be done." Dr. Kemem provided a written informal resolution, per KDOC's corrections policies and procedures on grievances (the "CPP"), on September 1, 2009. Mr. Laroche acknowledged receipt of the informal resolution and that he was not satisfied with the response on September 8, 2009. By that time, he had already filed this lawsuit on September 2, 2009.

Mr. Laroche appealed to the Health Care Grievance Committee at KSR. The Committee concurred with Dr. Kemem's informal resolution in a September 16, 2009 decision. He filed his final appeal with KDOC's medical director, Dr. Scott Haas, on September 18, 2009. This appeal specified that the Hilands' indifference to his broken hip at KSP caused his painful conditions and repeated his requests for pain medication and to heed any recommendations from UK surgeons. Dr. Haas concurred with the Committee in a October 19, 2009 decision. Dr. Haas explained that opiate pain medication was not indicated for Plaintiff's condition and that the correctional primary care provider had the discretion to honor recommendations from outside

---

[1] Plaintiff's brief asserts he submitted the grievance on August 2nd because the date next to his signature on the grievance reads, "8/2/09." Defendants counter that it was filed on August 20, 2009 and Mr. Laroche merely omitted the zero when writing the date next to his signature. The Grievance Aide, an inmate elected to help other inmates file grievances, signed and dated the grievance "8/20/09" and the "date received" indicated on the form is "August 20, 2009." Further complicating the issue, Plaintiff's complaint states "I have requested treatment for pain several times as recently as 8-24-09." As explained below, the timing of this filing is immaterial to the resolution of Defendants' motion.

medical professionals. He did not address Plaintiff's complaints regarding the Hilands.

II.

This Court reviews a motion to dismiss under Rule 12(b)(6) taking all factual allegations in the complaint as true and construed liberally in favor of the plaintiff. *Ambani*, 577 F.3d at 646 (citations omitted). The Court must determine whether Plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face" and not merely conceivable. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility arises when the complaint's factual content allows a reasonable inference of defendant's liability. *Aschcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint has failed to show plaintiff is entitled to relief. *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

Mr. Laroche alleges that Defendants, acting in their individual capacities, violated 42 U.S.C. § 1983. A § 1983 plaintiff must allege a person acting under the color of state law deprived plaintiff of a federal right. *West v. Atkins*, 482 U.S. 42, 48 (1988). Defendants' motion does not argue that Plaintiff has failed to meet these requirements. Mr. Laroche's complaint states that Defendants' indifference to his medical needs deprived him of his Eighth Amendment right to be free from cruel or unusual punishment. *See id.* at 54 (holding that state-employed physicians act under the color of law); *Estelle v. Gamble*, 429 U.S. 97, 104 (prison doctor's deliberate indifference to prisoner's serious medical needs violates Eighth Amendment).

Instead, Defendants argue that Plaintiff has failed to exhaust his administrative remedies prior to filing this lawsuit, as the PLRA requires of prisoner plaintiffs filing § 1983 actions. 42

U.S.C. § 1997e(a). The PLRA does not require Plaintiff to plead or demonstrate exhaustion in his complaint; rather, exhaustion is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Although an affirmative defense rather than a pleading requirement, failure to exhaust may still "be a basis for dismissal for failure to state a claim." *Id.* The defense must appear on the face of the complaint to warrant dismissal under Rule 12(b)(6). *Id.* at 215 (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (3rd Cir. 2001); *see also Riverview Health Inst. v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)). Courts look to a prison system's internal policies–here, the KDOC's CPP 14.6–to determine whether a plaintiff has exhausted administrative remedies.

### III.

The Hilands make three arguments in support of their contention that Mr. Laroche failed to exhaust his administrative remedies. First, they concede Plaintiff's grievance initiated on August 20, 2009 exhausted administrative remedies, but argue the grievance did not name the Hilands as aspects of the issue he wanted addressed. Second, even if the August 20, 2009 grievance did complain of the Hilands' conduct, Mr. Laroche filed it more than five working days after May 18, 2009, the last day he had any contact with the Hilands. Section 14.6(K)(1)(a)(2) of the CPP requires an inmate to file a grievance "within five (5) working days after the incident or decision occurs." Third, they argue, accepting as true that Plaintiff first filed a grievance at KSP, that merely filing a grievance that went unanswered did not exhaust his administrative remedies. They note that Plaintiff "never claims he took the next step in the grievance process" and thus never exhausted his KSP grievance.

Mr. Laroche responds to each of these arguments, but the Court need only address the KSP grievance, as that issue disposes of the Hilands' motion.[2] Plaintiff argues that KSP's failure to respond to his first grievance constitutes exhaustion. He argues that if a prison fails to respond to a grievance, then the grievance should be considered exhausted under the PLRA. 380 F.3d at 996.

The law in this arena is not quite that simple. Whether an inmate's unanswered grievance alone constitutes exhaustion depends on the underlying grievance policy. If such policy allows an inmate to continue to the next step in the grievance process when prison officials do not respond to the initial grievance, then the prisoner has not exhausted remedies. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). But where the policy required a prisoner to wait for a decision on the initial grievance before continuing the administrative process, the unanswered grievance satisfies the PLRA's exhaustion requirement. *Boyd*, 380 F.3d at 996; *see also Malick v. Campbell*, No. 3:06-CV-P-156-H, 2008 WL 314383, at *3, n.3 (W.D. KY Feb. 4, 3008).

Here, CPP 14.6(K) appears to require prisoners making health care grievances to wait for a response before moving to the next step in the process. Section 14.6(K)(1)(c) allows a prisoner to request review of a Grievance Coordinator's response "within five (5) working days of the date of the notice of the informal resolution results." This provision presupposes a prisoner receiving a response–that is, "informal resolution results"–before seeking the next level of

---

[2] Plaintiff argues the August 20, 2009 grievance complained of medical conditions attributable to Defendants' conduct and that he was not required to specifically name the Defendants in his grievances. He also argues that rejection of the July 31, 2009 grievance was an improper screening and that the CPP's five-day restriction applies only to complaints of specific incidents or decisions, not continuous lack of adequate medical care. The Court makes no opinion as to these arguments.

review.  The CPP's Health Care Grievance Process has no other provision governing unanswered grievances.  In contrast, the CPP section for general grievances–those unrelated to health care–expressly provides: "If a time limit for a response from Corrections staff is not met at any level, the grievant has the option of agreeing to a requested extension of the time limit or having the grievance forwarded without action to the next level of review."  CPP 14.6(J)(5)(a).

In both *Hartsfield* and *Malick*, the underlying prison grievance policies explicitly allowed prisoners to continue through the grievance process when their initial grievance went unanswered.  Similarly, KDOC's policy allows prisoners grieving about issues other than health care to appeal unanswered grievances.  However, the Health Care Grievance Process has no such language and presupposes an initial response before a prisoner may seek review.  Thus, *Boyd* controls this situation.

Plaintiff alleges he filed a grievance at KSP regarding inadequate medical treatment from Defendants to which KDOC staff did not respond.  He did not have a duty to further pursue this grievance, as the CPP did not allow appeals of unanswered grievances.  Defendants have not shown from the face of Plaintiff's complaint that he has failed to exhaust administrative remedies.  Absent such a showing, Defendants are not entitled to dismissal under Rule 12(b)(6).

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is DENIED.

IT IS FURTHER ORDERED that Plaintiff's time to disclose expert witnesses is extended to December 17, 2011; Defendants' time is extended to January 17, 2012.  All other deadlines shall remain in force.  The dispositive motion deadline is March 2, 2012, and the trial is set for August 20, 2012.

The Court does not anticipate any change in the trial date.  Plaintiff's cause of action under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights remains against Dr. Steven Hiland, Channin Hiland, Dr. Howard Schiele, and Cahaba Imaging, P.C.

cc:     Counsel of Record