UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-683-H

LEWIS R. LAROCHE                                                                                             PLAINTIFF

V.

STEVEN HILAND, MD, et al.                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Defendants, CorrectCare-Integrated Health Inc. ("CorrectCare"), Steven Hiland, M.D. ("Dr. Hiland"), and Channin Hiland ("Nurse Hiland"), have each separately moved for summary judgment on the claims of deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

Plaintiff was eventually treated for a serious pelvic condition. The Court cannot see any reliable evidence that Defendants ignored such a condition upon examination after his initial fall in December, 2008. Whether that condition was aroused in May, 2009, or earlier is not known. Plaintiff has no medical opinion of a misdiagnosis and certainly no evidence that Defendants were indifferent, deliberately or otherwise, as to Plaintiff's various medical problems. For these reasons and those set forth below, Plaintiff's claims cannot go forward.

I.

Dr. and Nurse Hiland are as members of the medical staff that provide medical care for the inmates at the Kentucky State Penitentiary in Eddyville, Kentucky ("KSP"). Plaintiff alleges that Dr. Hiland and Nurse Hiland knew that Plaintiff's hip was fractured but failed to treat the injury for six months. Plaintiff has taken limited discovery. The evidence appears as follows.

On December 23, 2008, Plaintiff suffered a fall and complained of pain in his left hip. In

his complaint, Plaintiff states, "I requested to go to the Dr. but they said, you can go in the morning."[1] The following day, December 24, 2008, Plaintiff reported to the infirmary, and Nurse Hiland investigated his complaints. Plaintiff's hip was x-rayed; he received medication for pain; and he was ordered to remain in the infirmary until further notice. The x-ray examination revealed no fracture.[2]

After four days in the infirmary, on December 27, 2008, Plaintiff asked to be released from the infirmary. At the time of his release, Plaintiff was ambulating without crutches. He was issued prescriptions for Naproxen after his fall and received additional prescriptions for anti-inflammatory medications and muscle relaxers through January 2009. On January 14, 2009, Dr. Howard Scheile of Cahaba Imaging concluded that Plaintiff's left hip was within normal limits on December 24, 2008.

On February 4, 2009, Plaintiff went to the infirmary again with complaints of back pain and muscle spasms. At that time, Plaintiff received a prescription for muscle relaxers and another thirty days of anti-inflammatory medication. Twenty days later, on February 24, 2009, Plaintiff returned to the infirmary with complaints of hip pain. He was diagnosed with a soft tissue injury and advised to continue taking Naproxen. On March 27, 2009, Plaintiff asked for Indocin (Indomethacin). Dr. Hiland prescribed two weeks of Indocin for Plaintiff's pain relief. That regimen of pain treatment extended to April 9, 2009. Plaintiff did not request anything further until May 5, 2009, when a prescription for 30 days of Indocin was issued to him.

---

[1] Plaintiff says that he was denied treatment on December 23rd. However, regardless of the circumstances, this has no consequence to the case.

[2] Plaintiff has said that Nurse Hiland took x-rays of the left hip and pelvis but disposed of the pelvis x-ray to avoiding treating his injury. The Court has found nothing in the record to substantiate such a claim.

Plaintiff's contends that between December 2008 and May 2009, he filed "dozens" of sick slips without response. Regardless of whether there is truth to these allegations, the medical staff attended to Plaintiff's hip-related complaints in February (twice), March, and May 2009. On each occasion he requested and was provided additional pain medicine. Plaintiff also visited the infirmary on several unrelated occasions during this time period to obtain prescription eyeglasses and undergo tuberculosis testing.

Plaintiff received treatment for a soft-tissue injury during the four and a half month interval between December 23rd until May 17, 2009, when he presented additional complaints, including that he suffered another fall. He was admitted to the infirmary. The x-ray examination on May 18 revealed irregularities in his left hip joint that required treatment unavailable at KSP. That same day, Dr. Hiland and the KSP medical staff took the necessary steps to send Plaintiff to West Baptist Hospital ("WBH"), a facility that could provide the proper treatment.

The WBH medical staff confirmed the presence of irregularities, finding a fragment of pelvic bone lodged in the hip joint, and diagnosed advanced erosion of the femoral head and pelvic socket, osteomyelitis, a septic hip joint, and a large abscess in the psoas muscle. Dr. Robert Garneau of WBH "suspected" an "old fracture" of the pelvis to be the cause of the damage but did not commit to its presence or estimate its age. No physician found evidence of a fractured left hip.

The primary thrust of Plaintiff's complaint is that Dr. Hiland and Nurse Hiland should have diagnosed a hip or pelvic fracture in December 2008. Only after reviewing the May 18, 2009 left hip x-ray did Dr. Scheile suggest that "[i]f the possibility of a pelvic fracture is suspected, AP and oblique views of the pelvis should be considered." There is no medical

record or physician testimony from which one could conclude that Plaintiff suffered a fractured hip on or about December 2008, and Plaintiff's records do not indicate that any medical staff observed and then neglected to treat the pelvic fracture discovered by WBH on May 18, 2009.

II.

The Court shall grant summary judgment "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing a motion for summary judgement, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). After the movant has carried its initial burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

III.

To establish his constitutional claim, Plaintiff must demonstrate "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Deliberate indifference has both objective and subjective requirements that must be met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1970); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). The objective portion requires the inmate to show "the existence of 'sufficiently serious' medical need." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a

4

lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)).

Plaintiff argues that he suffered from a serious medical condition ever since his fall on December 23, 2008. This is a highly debatable point as the medical staff, lacking any evidence of a fracture, diagnosed the condition as a soft-tissue injury and prescribed pain medicine. This diagnosis and his recorded complaints do not amount to a known serious condition. Dr. Scheile has suggested the "possibility" that the pelvic condition developed prior to May 2009. No doctor has given a sound opinion. The medical evidence only supports the legal conclusion that no serious condition existed until May 2009 when Plaintiff fell again, and damage to his pelvis and hip joint became more apparent. Nevertheless, for purposes of this motion, the Court will assume that a condition existed in December 2008.

To demonstrate the subjective portion, the inmate must show that the official knew and disregarded an excessive risk to the inmate's health and safety. *Farmer*, 511 U.S. at 834; *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010). The official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The Sixth Circuit cautions, "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Additionally the difference of opinion between the patient and healthcare professionals does not give rise to a constitutional claim. *Estelle*, 429 U.S. at 105-06; *Alexander v. Fed. Bureau of Prisons*, 227 F. Supp. 2d 657, 666 (E.D. Ky. 2002).

5

Plaintiff argues that Defendants should have ordered another x-ray, a CAT scan, or MRI for his continuing complaints of hip pain. The Supreme Court in *Estelle* rejected similar arguments, stating that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." 429 U.S. at 107. Moreover, there is no medical evidence that Plaintiff suffered a fractured pelvis or damaged hip joint until May 2009.

Plaintiff relies on Dr. Joseph E. Paris's expert statement that "it is reasonable to assume that LaRoche experienced a pelvic (acetabular) fracture as a result of the fall on 12-23-08." Dr. Paris explained that "[t]he exact progression of events cannot be pinpointed." The assumption that a pelvic fracture occurred on December 23, 2008 is not made with a reasonable degree of medical certainty. The subject of expert testimony must be actual knowledge, not mere "subjective belief or unsupported speculation." *Daubert v. Merrill Dow Pharm.*, 509 U.S. 579, 590 (1993). Plaintiff's medical records and the diagnoses multiple physicians provide a no connection between that fall and the fracture found on May 18, 2009. Therefore, Federal Rule of Evidence 702 would exclude Dr. Paris' "assumption" at trial.

Finally, Plaintiff suggests that someone ignored over "two dozen" sick call requests between January and May 2009. This is an extension of his argument that Defendants simply did not pay sufficient attention to his complaints, all of which amounts to deliberate indifference. However, Plaintiff was seen monthly as his pain medicine expired and on other occasions for other complaints. There is no record of these requests. Even if Plaintiff was not seen upon every request, one cannot say that Dr. Hiland and Nurse Hiland ignored Plaintiff's medical condition.

Even if the Court assumes that Plaintiff fractured his pelvis in December 2008 and that Defendants acted negligently in treating him, the constitutional claim still fails. "Medical

malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Plaintiff failed to establish that he suffered a serious medical need prior to May 2009. Even if the serious need is assumed, Defendants relied on an x-ray that showed no irregularities and thus held no knowledge of the possible injury to his pelvis and hip joint. With neither the objective nor subjective requirements of deliberate indifference satisfied, Plaintiffs Eighth Amendment claim cannot stand.

IV.

The complaint suggests the sole factual basis underlying Plaintiff's claim of liability against CorrectCare is his assertion that the Hilands are CorrectCare employees. In particular, he complains of CorrectCare's indifferent hiring practices, which he claims are motivated by business profit rather than the well being of inmates. He also complains that CorrectCare's employment of the Hilands, who happen to be married, "is against the Ky. Law on Nepotism, which puts the Hilands working against the law," and that, as a result of employment relationship, CorrectCare should "be held accountable for their actions." However, Plaintiff has not rebutted CorrectCare's affidavit demonstrating that it did not employ the Hilands. Therefore, there can be no claim for vicarious liability against it.

Plaintiff claims that CorrectCare directly violated his constitutional rights by enacting policies and procedures that encouraged the Hilands to disregard his treatment and failing to monitor his medical records and quality of care. Again, Plaintiff fails to provided the Court with adequate, supporting evidence that such policies and procedures existed and that CorrectCare held a duty to actively review his medical records and on-site care. However, CorrectCare does authorized all medical treatment provided at off-site facilities, such as WBH, and all of the

requests for off-site care made on behalf of Plaintiff received approval. CorrectCare's control over medical records is also limited; it only licenses the record-keeping software to KSP. Plaintiff produced no evidence that CorrectCare committed these alleged actions or that those actions amounted to deliberate indifference to his serious medical need. The claim that CorrectCare directly violated Plaintiff's constitutional rights is without merit.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is SUSTAINED and Plaintiff's claims against CorrectCare, Dr. Hiland, and Nurse Hiland are DISMISSED WITH PREJUDICE.

This is a final order.

cc:   Counsel of Record